# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

IN RE:

ALDRICH PUMP LLC, et al.,

              Debtors.

Civil Action No.:

Underlying Case No. 20-30608 (JCW)

(U.S. Bankruptcy Court for the Western District of North Carolina)

**ORAL ARGUMENT REQUESTED**

---

## MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY ASBESTOS TRUSTS' MOTION TO QUASH SUBPOENAS AND IN SUPPORT OF STAY

---

**LOWENSTEIN SANDLER LLP**
Lynda A. Bennett
Michael A. Kaplan
Rachel M. Dikovics
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
lbennett@lowenstein.com
mkaplan@lowenstein.com
rdikovics@lowenstein.com
*Attorneys for Third-Party Asbestos Trusts*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ............................ 5

    A.    The Trusts and Their Claims Processes. ..................................... 5

    B.    The TDPs Require the Trusts to Maintain the Confidentiality of Claimant Data. ............................................... 8

    C.    The *In re Bestwall* Litigation and Pending Third Circuit Appeal. ........................................................................ 9

    D.    The Subpoenas and the North Carolina Order. ......................... 11

ARGUMENT ...................................................................................... 15

   I.    JURISDICTION. ....................................................................... 15

   II.    THE TRUST SUBPOENAS MUST BE QUASHED. ....................... 15

    A.    The Trust Subpoenas are Procedurally and Jurisdictionally Improper. ................................................... 17

    B.    The Trust Subpoenas Violate Rules 26(b)(1) and 45(d)(3). ................................................................ 19

        1.    The Trust Subpoenas Lack Proportionality and are Overbroad and Unduly Burdensome. ........................... 20

            i.    The Trust Subpoenas Seek Irrelevant Information. ............................................... 21

            ii.    The Trust Subpoenas Fail to Include a 10 Percent Sampling Requirement or Meaningful Anonymization. ......................... 22

        2.    The Trust Subpoenas Require Disclosure of Protected Matter. ........................................................ 25

   III.    DISPOSITION OF THIS MOTION SHOULD BE STAYED PENDING THE OUTCOME OF *IN RE BESTWALL*. ....................... 28

CONCLUSION .................................................................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Actelion Pharms., Ltd. v. Apotex Inc.*,
  No. 12-5743, 2013 WL 5524078 (D.N.J. Sept. 6, 2013) .................................... 29

*Arrowhead Cap. Fin., Ltd. v. Seven Arts Ent., Inc.*,
  No. 14 Civ. 6512, 2021 WL 411379 (S.D.N.Y. Feb. 5, 2021) .................... 15, 19

*In re Bestwall LLC*,
  No. 21-141, 2021 WL 2209884 (D. Del. June 1, 2021) .................... 9, 10, 22, 23

*In re Bestwall LLC*,
  No. 21-2263 (3d Cir. 2021) ........................................................................ *passim*

*Burress v. Freedom Mortg. Corp.*,
  No. 20-15242, 2022 WL 586606 (D.N.J. Jan. 31, 2022) .................................. 28

*Chazanow v. Sussex Bank*,
  No. 11-1094, 2014 WL 2965697 (D.N.J. July 1, 2014) ............................... 17, 22

*In re DBMP LLC*,
  No. 22-139-CFC (D. Del. 2022) .......................................................................... 28

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
  2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012) ...................................................... 24

*Ford Motor Co. v. Edgewood Props., Inc.*,
  No. 06-1278, 2011 WL 601312 (D.N.J. Feb. 15, 2011) ............................... 20, 22

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
  No. 14-6171, 2014 WL 12767360 (D.N.J. Dec. 18, 2014) ................................ 17

*In re Garlock Sealing Techs.*,
  504 B.R. 71 (Bankr. W.D.N.C. 2014) ................................................................ 24

*Gilmore v. Jones*,
  No. 21-13184, 2022 WL 267422 (D.N.J. Jan. 28, 2022) ....................... 15, 16, 25

*Havemann v. Colvin*,
    537 F. App'x 142 (4th Cir. 2013) ........................................................27

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ..............................................................................18

*Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.*,
    No. 20-11050, 2022 WL 2191519 (D.N.J. June 17, 2022) ..............16, 20, 21, 25

*Laxalt v. McClatchy*,
    116 F.R.D. 455 (D. Nev. 1986) ...........................................................17

*In re Lazaridis*,
    865 F. Supp. 2d 521 (D.N.J. 2011) ...............................................16, 20, 21, 23

*In re Motions Seeking Access to 2019 Statements*,
    585 B.R. 733 (D. Del. 2018) ................................................................10

*Myers v. Atl. Health Sys.*,
    No. 13-4712, 2016 WL 819619 (D.N.J. Mar. 2, 2016) ......................26

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Porter Hayden Co.*,
    No. CCB-03-3408, 2012 WL 628493 (D. Md. Feb. 24, 2012) ..........23

*SAJ Distrib., Inc. v. Sandoz*,
    No. 08-1866, 2008 WL 2668953 (D.N.J. June 27, 2008) ..................16

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ..............................................................................23

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*,
    510 U.S. 487 (1994) ..............................................................................27

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
    489 U.S. 749 (1989) ..............................................................................27

*United States v. Jones*,
    565 U.S. 400 (2012) ..............................................................................27

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ..............................................................................18

**Statutes**

28 U.S.C. § 1782(a) ........................................................................7, 15, 18

Bankruptcy Code Chapter 11 § 524(g) ...................................................2, 5

N.C. Gen. Stat. § 1-75.4.........................................................................18

**Other Authorities**

Federal Rule of Civil Procedure 4(e)(1) ..................................................17

Federal Rule of Civil Procedure 26 ...............................................*passim*

Federal Rule of Civil Procedure 45 ...............................................*passim*

Manual for Complex Litigation (Fourth) 2020........................................23

The eight third-party asbestos settlement trusts identified below[1] (collectively, the "**Trusts**"), by and through their undersigned counsel, respectfully submit this motion (i) pursuant to Federal Rule of Civil Procedure 45(d)(3), to quash the subpoenas served on them by Aldrich Pump LLC and Murray Boiler LLC (together, the "**Debtors**") (the "**Trust Subpoenas**"); but request that the Court (ii) pursuant to Federal Rule of Civil Procedure 26(c), stay disposition of this motion to quash pending the outcome of an appeal in the United States Court of Appeals for the Third Circuit in *In re Bestwall LLC*, No. 21-2263, where the Circuit Court is currently considering whether substantially similar subpoenas are even enforceable and, if so, what scope of information is fairly subject to production.

## PRELIMINARY STATEMENT

This matter arises out of the Debtors' attempt to circumvent this Court's jurisdiction by obtaining a procedurally improper, jurisdictionally invalid, overbroad, and unduly burdensome *ex parte* third-party subpoena from a bankruptcy court in North Carolina without jurisdiction over the Trusts, in an effort to obtain highly sensitive and confidential medical and claim information about thousands of

---

[1] The eight trusts are: (i) ACandS Asbestos Settlement Trust; (ii) Combustion Engineering 524(g) Asbestos PI Trust; (iii) G-I Holdings Inc. Asbestos Personal Injury Settlement Trust; (iv) GST Settlement Facility; (v) Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust; (vi) Quigley Company, Inc. Asbestos PI Trust; (vii) T H Agriculture & Nutrition, L.L.C. Asbestos Personal Injury Trust; and (viii) Yarway Asbestos Personal Injury Trust.

asbestos victims.  The Trusts were established by debtors-in-possession (the "**Underlying Companies**") to settle present and future claims by asbestos victims against those debtors.  Asbestos claimants provide the Trusts with extraordinarily sensitive comprehensive personal health information as well as other confidential data.  The Trusts utilize a claims processor, Verus Claims Services LLC ("**Verus**"), to process and analyze submitted claims and to securely store associated confidential data.  Each of the Trusts is bound by bankruptcy court-approved Trust Distribution Procedures ("**TDPs**")[2] that require them to take steps to preserve the confidentiality of claimant data when its disclosure is sought.

The Debtors are presently engaged in Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the Western District of North Carolina.  By way of a July 1, 2022 order (the "**Order**"), that court, without jurisdiction over the Trusts, authorized the Debtors to serve subpoenas on Verus and the Trusts seeking the production of a massive amount of electronically stored claimant information for thousands of individuals who made claims against the Debtors over a span of fifteen years.  The Trusts were not participants in the motion practice in North Carolina and have not otherwise appeared in that proceeding.  The Order purports to require the Trusts, over which that court has no jurisdiction, to compile new information and

---

[2]   Instead of a TDP, GST Settlement Facility uses a document titled "Claims Resolution Procedures."  For ease of reference, however, the Trusts will refer to all such documents as "TDPs."

analyze information provided by the Debtors, exceeding the scope of Federal Rule of Civil Procedure 45, and includes procedural requirements that the Trusts supposedly must follow.  The Order further purports to compel the Trusts to provide affected claimants with notice, dictates the substance of those notices, and even compels the Trusts to meet-and-confer with the Debtors, none of which falls within the ambit of Rule 45.  The Trusts now move to quash the Trust Subpoenas because they are jurisdictionally invalid and violate Rules 26 and 45.

As a threshold matter, the Western District of North Carolina lacked jurisdiction over the Trusts; thus, the Trust Subpoenas were procedurally improper and the Trusts should not be required to respond to invalid subpoenas.

Even if Trust Subpoenas are not jurisdictionally defective, they are nevertheless substantively deficient because they are not "proportional to the needs of the case" as required by Rule 26, and are "overbroad," "unduly burdensome," and seek privileged and other protected, confidential information in violation of Rule 45. *First*, the Trusts only process claims filed by asbestos victims who allege injury from the Underlying Companies' products, *not* the Debtors' products.  The Debtors' assertion that they require the subpoenaed information to better determine their current and future liability to asbestos victims who used their products is therefore attenuated at best. Accordingly, the Trust Subpoenas are not proportional to the Debtors' actual discovery needs and are substantially overbroad.  *Second*, the Trust

Subpoenas are unduly burdensome because they fail to limit the production of claimant data to a 10 percent sample despite the fact that Bates White, the Debtors' expert, agreed to use a 10 percent sample in response to nearly identical subpoenas earlier this year, as detailed *infra* pp. 10, 23–24.  Responding to requests like the Trust Subpoenas is not a "push the button" exercise for the Trusts or for Verus; compiling the requested data and creating the mandated documents has a material, negative impact on the Trusts' ability to fulfill their mission of compensating injured parties as promptly and efficiently as possible, which will undoubtedly result in delayed settlements with claimants, some whom may die waiting for their claims to be paid.  **Third**, the Trust Subpoenas seek protected, highly confidential claimant personal health information without meaningful safeguards.  The Trust Subpoenas incorporate a purported "anonymization" procedure that allows for any claimant data the Trusts produce to ultimately be de-anonymized by the Debtors.  Anything other than true and effective anonymization is unacceptable to the Trusts.

However, before ruling on the issues above—any one of which independently requires the Trust Subpoenas to be quashed—the Court should stay the matter pending the resolution of the appeal in *In re Bestwall LLC* because a ruling by the Circuit Court in that appeal will be highly instructive as to the outcome of this matter. Last year, the Delaware District Court quashed nearly identical subpoenas to another group of asbestos trusts from similarly situated debtors (also issued by way of a

North Carolina bankruptcy court order), holding that any future subpoenas could only require production of a 10 percent sample set of claimant information and had to include certain effective anonymization features to safeguard the privacy of claimant data.  The debtors in that case appealed, the appeal has been fully briefed and argued, and the Third Circuit's ruling is imminent.  A Third Circuit *Bestwall* decision will be important in deciding the outcome of this matter, and accordingly, to conserve both judicial and party resources, the Trusts seek a stay of the instant matter pending the outcome of the *Bestwall* appeal.

For the reasons that follow, the Trusts respectfully request that their motion to quash and for a stay be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The Trusts and Their Claims Processes.

Each of the Trusts was established pursuant to Section 524(g) of Chapter 11 of the Bankruptcy Code as part of each Underlying Company's (*e.g.*, G-I Holdings, Inc., Quigley Company, Inc., etc.) confirmed plan of reorganization, all of which required the creation and funding of a trust to compensate current and future asbestos claimants against each respective Underlying Company.  The sole purpose of the Trusts is to pay victims.  Consistent with those reorganization plans, Bankruptcy

Code § 524(g), and the individual TDPs[3] that govern each Trusts' payment of claims, the Trusts are each responsible for ensuring that claimants are treated fairly, equitably, and reasonably in processing and paying valid asbestos personal injury claims based on exposure to the respective Underlying Company's asbestos containing products. Each Trust is governed by its own TDP, maintains its own assets, and has its own exposure and proof requirements and a unique evaluation methodology. The Trusts do not act in concert as to claims settlements and do not engage in global or multi-Trust settlements with individual claimants. With the exception of Quigley Company, Inc. Asbestos PI Trust, which is a New York common law trust, all of the Trusts are Delaware entities. (*See* Bennett Cert., Ex. A.) While some claimants may reside in North Carolina, the Trusts do not operate in North Carolina or have any contacts in the state sufficient for personal jurisdiction to exist over the Trusts in North Carolina.

Each Trust employs Verus, a New Jersey corporation, as a third-party claims administrator to process and administer the personal injury claims filed with each Trust. (*See* August 19, 2022 Declaration of Mark T. Eveland in Support of Verus's Motion to Quash[4] ("**Eveland Decl.**") ¶¶ 2–3.) Verus maintains all records and

---

[3]   *See* August 19, 2022 Certification of Lynda A. Bennett, Esq. ("**Bennett Cert.**"), Ex. B–I.

[4]   Verus intends to file its own motion to quash in this action, including Mr. Eveland's declaration, which is incorporated herein by reference.

documents requested in the Trust Subpoenas.[5]   (*See id.* ¶ 4.)   It accepts claim submissions, reviews them, provides the settlement value, and makes payments to claimants at the direction of the Trusts using Trust funds.   (*See generally id.*)   As part of the claims process, claimants who assert exposure to the asbestos containing products of the pertinent Underlying Company for which the Trust is responsible submit medical and other personal records to the Trusts for review and analysis. Those records include medical and financial information of claimants and their dependents or other third-parties, including, among other things, Social Security Numbers ("**SSNs**"), and even tax returns.   (*Id.* ¶ 11.)   Verus reviews claimant submissions according to each Trust's TDP.   Verus's work product and notes are also typically part of the claim files, including, for example, its proprietary methodology for reviewing and analyzing claimants' medical information and its claim processors' analyses.   (*Id.* ¶¶ 6, 9, 14.)   Accordingly, all documents relating to claims processing and settlement are privileged and confidential.

---

[5]   As detailed *infra* p. 15, this Court has jurisdiction over this Motion because Verus resides – as do the records sought in the Subpoenas – in this district, and accordingly, the Trusts' compliance with subpoenas is required here.   *See* 28 U.S.C. § 1782(a) ("The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . .").   (*See* Eveland Decl. ¶¶ 2, 4.)

**B.** **The TDPs Require the Trusts to Maintain the Confidentiality of Claimant Data.**

As detailed above, the information claimants submit to the Trusts is highly confidential and personal in nature, and the Trusts are required to maintain the confidentiality of that data.  The Trusts must treat all submissions "as made in the course of settlement discussions between the holder and the Trust and intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including, but not limited to, those directly applicable to settlement discussions."  (*See, e.g.*, Bennett Cert., Ex. B § 6.5.)  Specifically, each TDP states, in substantively similar language, that the Trust will

> preserve the confidentiality of such claimant submissions, and shall disclose the contents thereof only (i) with the permission of the holder, to another trust established for the benefit of asbestos personal injury claimants pursuant to section 524(g) of the Bankruptcy Code or other applicable law, (ii) to such other persons as authorized by the holder or (iii) in response to a valid subpoena of such materials issued by a Delaware State Court or the United States District Court for the District of Delaware.

(*See, e.g.*, *id.*, Ex. I § 6.5.)

The Trusts are further required to notify claimants' counsel upon receipt of a subpoena seeking claimants' submissions to the Trusts.  (*See, e.g.*, *id.*, Ex. B § 6.5.) Due to the highly confidential nature of claimants' submissions, the Trusts have invested substantial time and resources into the protection of those submissions. (Eveland Decl. ¶ 8.)

C.     The *In re Bestwall* Litigation and Pending Third Circuit Appeal.

Last April, nine asbestos trusts moved the District of Delaware to quash subpoenas seeking confidential information of more than 15,000 trust claimants. *In re Bestwall LLC*, No. 21-141, 2021 WL 2209884 (D. Del. June 1, 2021). The debtor, Bestwall LLC ("**Bestwall**"), sought to use the subpoenaed information to estimate its liability for certain current and future mesothelioma claims. *Id.* at *2. The trusts moved to quash the subpoenas based on "the highly sensitive, personal, and confidential nature of the information sought by [the debtor], as well as the unnecessary scale of disclosure sought," or alternatively, to modify them to limit the production to a 10 percent random sample of claimants and require the claims processor to anonymize data before producing it "to Bates White or Bestwall." *Id.* at *3–4.

On June 1, 2021, the District Court granted the trusts' motion to quash on the basis that the subpoenas sought "sweeping personal data" and lacked necessary safeguards to protect claimant data. *Id.* at *6–7. In a June 17, 2021 order clarifying its initial decision, the District Court confirmed that:

> [a]ny revised subpoena by Bestwall, LLC must: (i) limit the production of Trust Claimants' data to a random sample of no more than 10% of the 15,000 mesothelioma victims at issue; (ii) authorize the Delaware Claims Processing Facility, or a neutral third party, to anonymize the Trust Claimants' data before producing it, and (iii)

> include additional protections consistent with the Access
> Decision.[6]

(Order Granting Mot. for Clarification, *In re Bestwall, LLC*, No. 21-141 (D. Del. June 17, 2021), Dkt. No. 33 at 2 ("***Bestwall* June 17, 2021 Order***").)

Bestwall appealed the District of Delaware's decision, and that matter is currently pending before the Third Circuit, having now been fully briefed and argued (*In re Bestwall LLC*, No. 21-2263). Accordingly, the Third Circuit's imminent ruling will confirm, among other things, whether a district court with jurisdiction over the Trusts has the authority to quash a subpoena issued pursuant to an order of a bankruptcy court that had no jurisdiction over the subpoenaed Trusts. Notably, while that appeal has been pending, Bates White – Bestwall's expert ***and*** the Debtors' expert in this matter – issued new subpoenas in the *Bestwall* matter with a 10 percent sampling requirement and anonymization measures, thereby confirming that Bates White does not need the broad-sweeping and highly personal information that is requested in the Trust Subpoenas here and that it can perform its services with limited information that is produced on a truly anonymous basis. (*See* Mot. to Amend Prior Orders to Approve Revised Subpoena for Asbestos Trust Data, *In re Bestwall LLC*, No. 21-141 (D. Del. June 29, 2021), Dkt. No. 36-1.)

---

[6]   *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733 (D. Del. 2018).

**D.     The Subpoenas and the North Carolina Order.**

On April 7, 2022, the Debtors moved the U.S. Bankruptcy Court for the Western District of North Carolina for an order authorizing their issuance of subpoenas seeking discovery of thousands of confidential claim submissions made to the Trusts, among other parties.  (*See* Bennett Cert., Ex. J.)  Like Bestwall, the Debtors here sought to issue the Trust Subpoenas to estimate their own liability for certain current and future mesothelioma claims against the Debtors.  (*Id.* at 3–4.) The Debtors seek Trust claimant information to support their attenuated theory that their estimated liability for their own current and future asbestos personal injury claims is lower than the dollar amount that would be calculated based on what the Debtors actually paid to settle their own liability for similar claims against the Debtors in the tort system.  (*Id.* at 3-4, ¶ 13.)  The Debtors' motion did not set forth the legal basis for the requested authority to issue subpoenas seeking electronically stored data related to approximately 12,000 claimants with whom they settled claims prior to their bankruptcy.  The motion was directed to and sought data from Verus, among other claims processors.  (*Id.* ¶¶ 15–17.)  The Debtors also sought authority to issue subpoenas directly to the Trusts "in the event . . . Verus asserts that such subpoenas are necessary to secure production."  (*Id.* ¶ 16 n.9.)

As non-parties, the Trusts did not appear in the North Carolina matter. Nevertheless, on July 1, 2022, the North Carolina Bankruptcy Court issued the Order

granting the Debtors' motion and authorizing the Debtors' issuance of the subpoenas.  (*See* Bennett Cert., Ex. K ¶ 4; *id.* at ¶ 3 n.3.)  The Order did not consider or address the requirements of the *Bestwall* decision by failing to set a sample size or incorporate meaningful anonymization requirements.  Instead, it directed the Debtors' estimation expert, Bates White – which served in the same role in *Bestwall* – to create a "matching key" that Debtors would serve along with the subpoenas.  (*Id.* ¶¶ 6, 9.)  The matching key is a searchable list of claimants (identified by last name, SSN, and a claimant identification number) who asserted mesothelioma claims against the Debtors or their predecessors between January 1, 2005 and June 18, 2020.  (*Id.* ¶ 6.)

On July 5, 2022, the Debtors attempted to serve the Trusts with subpoenas "care of" Verus pursuant to the Order, but failed to provide the matching key.  Further, despite the fact that the Order purports to authorize the Debtors to serve the Trusts via Verus, (*id.* ¶ 10), Verus is not an authorized agent of all of the Trusts.  (Eveland Decl. ¶ 3.)  Accordingly, on July 15, 2022, the Debtors served the Trusts individually with the Trust Subpoenas.[7]  (Bennett Cert., Ex. L.)

The Order further requires that within 21 days of service, Verus will produce the following information for each "matching claimant" on the Debtors' list:

---

[7]  The Trusts' counsel agreed to accept service effective July 15, 2022 in order to avoid unnecessarily burdening the Court with respect to proper service.

     a.    Claimant Pseudonym;

     b.    Claimant's law firm (with email and address of contact person);

     c.    Date claim filed against Trust;

     d.    Date claim approved by Trust, if approved;

     e.    Date claim paid by Trust, if paid;

     f.    If not approved or paid, status of claim; and

     g.    All exposure-related fields, including:

         (i)    Date(s) exposure(s) began;

         (ii)    Date(s) exposure(s) ended;

         (iii)    Manner of exposure;

         (iv)    Occupation and industry when exposed; and

         (v)    Products to which exposed.

(*Id.*, Ex. K ¶ 10.)

In effect, the Trust Subpoenas require the Trusts, through Verus, as their claims administrator,[8] to ***create*** lists of matching claimant data, notify affected claimants[9], and meet and confer with the Debtors. (*See, e.g.*, *id.* ¶¶ 7–9.) This will unduly burden the Trusts, as their claims administrator will be diverted from processing claims of the victims, which is the purpose of the Trusts.

    The Trusts are particularly troubled by the purported requirement that they provide the Debtors with all "exposure-related fields" in the files of matching claimants, because it implicates claimants' confidential narrative responses. These

---

[8]   (Eveland Decl. ¶¶ 3, 5.)

[9]   Because the TDPs require the Trusts to notify affected claimants whenever data disclosure is sought, regardless of the validity of the request, the Trusts notified all affected claimants regarding the Trust Subpoenas.

responses contain especially sensitive information including names, SSNs, and addresses.   (Eveland Decl. ¶¶ 11–12.)   The Order endeavors to address this substantial privacy and security issue in a footnote, stating: "To the extent any names or SSNs appear in any exposure-related field, . . . Verus may redact such names and SSNs prior to production. . . ."  (Bennett Cert., Ex. K ¶ 10 n.8.)  However, this "fix" is unworkable because it substantially increases the burden of responding to the Trust Subpoenas as the Trusts and/or Verus would be required to spend an enormous amount of time and resources, at the Trusts' expense, manually reviewing each and every text field in the matching claimant files.  (*See* Eveland Decl. ¶ 25.)  In essence, the Order purports to require the non-party Trusts, over which that Court has no jurisdiction, to draw crucial resources away from their bankruptcy court-imposed duty to promptly evaluate claims and compensate victims, just so that the Debtors may receive what they speculate would be better, or "more complete" information about claimants who are seeking payments from the Debtors.  Moreover, the Order purports to require the Trusts to aggregate into a single database information regarding thousands of claims that is normally maintained separately for each of the Trusts, which presents significant data security concerns.  (Bennett Decl., Ex. K ¶¶ 7–11.)

-14-

## ARGUMENT

### I.     JURISDICTION.

This Court has jurisdiction over this Motion and Verus's response to the Trust Subpoenas because Verus is a New Jersey entity and the records requested are maintained in New Jersey.  *See* 28 U.S.C. § 1782(a); Fed. R. Civ. P. 45(d)(3)(A); *see also Gilmore v. Jones*, No. 21-13184, 2022 WL 267422, at *2 (D.N.J. Jan. 28, 2022) ("As a threshold matter, notwithstanding that the Western District of Virginia has issued the subpoena, the Court has jurisdiction over [the] Motion [to quash]. That is so because Verizon would comply with the subpoena in New Jersey."); *Arrowhead Cap. Fin., Ltd. v. Seven Arts Ent., Inc.*, No. 14 Civ. 6512, 2021 WL 411379, at *2 (S.D.N.Y. Feb. 5, 2021) ("The proper court in which to file a motion to quash or modify the subpoena is the court for the district where compliance is required . . . because a district court must have personal jurisdiction over a nonparty to compel compliance with a subpoena." (internal quotation marks and citation omitted)).

### II.    THE TRUST SUBPOENAS MUST BE QUASHED.[10]

Federal Rules of Civil Procedure 26 and 45 govern, respectively, the scope of discovery and the issuance, service, and content of subpoenas.  "Pursuant to Rule

---

[10]  While the Trusts refer broadly to the "Trust Subpoenas" in Point II, it is noteworthy (as detailed in II.A) that the subpoenas themselves lack any substantive content and refer only to the appended Order, which provides all of

26(b)(1), the scope of discovery is broad," but a court may limit this scope pursuant to Rule 45. *SAJ Distrib., Inc. v. Sandoz*, No. 08-1866, 2008 WL 2668953, at *2 (D.N.J. June 27, 2008). Rule 45 provides, in relevant part, that the court in which compliance with the subpoena is required ***must*** quash or modify a subpoena if it "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv); *see, e.g.*, *In re Lazaridis*, 865 F. Supp. 2d 521, 527–28 (D.N.J. 2011) (finding the "breadth of the request is great and intrusive" because, among other reasons, "[t]here is no time limitation to the request"); *Korotki v. Cooper Levenson, April, Niedelman & Wagenheim, P.A.*, No. 20-11050, 2022 WL 2191519, at *5 (D.N.J. June 17, 2022) ("[T]he Court can readily conclude that the Subpoenas are overbroad as drafted. The demands are vast, in many instances are temporally unrestrained, and would wield an undue burden on the Petitioner. . . ."); *Gilmore*, 2022 WL 267422, at *2–3 (quashing a subpoena that sought "irrelevant" and "privileged information").

"On a motion to quash, it is the moving party's burden to demonstrate that the subpoena is burdensome and unreasonable" or otherwise beyond the scope of Rule 45. *Lazaridis*, 865 F. Supp. 2d at 524. Generally, however, non-parties are "afforded greater protection from discovery than a normal party" to avoid unnecessary

---

the information requests and other requirements by which the Trusts must purportedly abide.

harassment, expense, and the disclosure of confidential information. *Chazanow v. Sussex Bank*, No. 11-1094, 2014 WL 2965697, at *3 (D.N.J. July 1, 2014) ("The standards for nonparty discovery require a stronger showing of relevance than for simple party discovery."); *see also Laxalt v. McClatchy*, 116 F.R.D. 455, 457 (D. Nev. 1986) (stating that third-party discovery is "limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents" (internal quotation marks and citation omitted)). The fact that "another district court has recently quashed virtually identical subpoenas" in the *Bestwall* matter is also relevant. *See Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 14-6171, 2014 WL 12767360, at *3 (D.N.J. Dec. 18, 2014) (finding it persuasive that the Eastern District of Missouri had recently quashed subpoenas by the same plaintiffs against other non-parties and had "rejected the same arguments that plaintiffs make here, holding that 'the information requested is incredibly extensive'" (citation omitted)).

As detailed below, the Trust Subpoenas must be quashed for both procedural and substantive reasons.

### A.     The Trust Subpoenas are Procedurally and Jurisdictionally Improper.

The North Carolina bankruptcy court did not establish jurisdiction over the Trusts such that it could bind them by way of the Order. "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen*

-17-

*Corp. v. Woodson*, 444 U.S. 286, 291 (1980).[11]   "[A] state court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum [s]tate." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   Requiring that a party has minimum contacts with a forum state in order to be subject to its jurisdiction has two purposes: it both "protects the [party] against the burdens of litigating in a distant or inconvenient forum" and "acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Id.* at 292.   Further, Rule 45 explicitly states that only "the court for the district where compliance is required," that is, the district where the target of the subpoena resides, has jurisdiction to compel compliance with a subpoena.  *See* 28 U.S.C. § 1782(a).

Importantly, the Trust Subpoenas themselves do not contain the information requests at issue; rather, the subpoenas refer to the requests contained in the ***Order*** issued by the North Carolina bankruptcy court that is appended to the subpoenas. (*See* Bennett Cert., Ex. K, L.)   This is problematic because the Trusts have not appeared before the Western District of North Carolina Bankruptcy Court for any

---

[11]   Federal Rule of Civil Procedure 4(e)(1) requires federal courts to establish jurisdiction over foreign defendants based on the rules of the state where the federal court is located.   North Carolina's long-arm statute mirrors federal standards requiring minimum contacts in the state.  *See* N.C. Gen. Stat. § 1-75.4.

reason and the Debtors have not otherwise established that a North Carolina court has personal jurisdiction over the Trusts such that it could order their compliance with the Trust Subpoenas. Indeed, the Trusts are ***not*** subject to the jurisdiction of North Carolina courts, including its bankruptcy courts; while some claimants may reside in North Carolina, the Trusts have ***no*** other contact with North Carolina, and thus are not subject to personal jurisdiction there. Accordingly, the North Carolina court lacked the jurisdiction required to issue the Order directing the Trusts to respond to the subpoenas. *See Arrowhead Cap. Fin.*, 2021 WL 411379, at *2 ("[A] district court must have personal jurisdiction over a nonparty to compel compliance with a subpoena." (internal quotation marks and citation omitted)). The Trust Subpoenas are therefore procedurally defective, jurisdictionally improper, and unenforceable. The Court's analysis need not proceed any further, but the Trusts offer the following in further independent support of the relief sought in this Motion.

### B.    The Trust Subpoenas Violate Rules 26(b)(1) and 45(d)(3).

Even if this Court determines that the Trust Subpoenas are not procedurally invalid, they are substantively contrary to Rules 26(b)(1) and 45(d)(3) in multiple respects and therefore must be quashed. Specifically, they (i) lack proportionality, are overbroad, as they request information that has no bearing on the Debtors' potential liability, and are unduly burdensome on non-parties due to the volume of data requested, failure to include sampling requirements, and lack of meaningful

temporal limitations; and (ii) seek disclosure of other protected matter without meaningful safeguards.

> ### 1. The Trust Subpoenas Lack Proportionality and are Overbroad and Unduly Burdensome.

The Trust Subpoenas must be quashed because they lack proportionality, are overbroad, and unduly burdensome.  Fed. R. Civ. P. 26(b)(1); 45(d)(3)(A)(iii)–(iv). The scope of discovery in any matter, including the content of subpoenas, must be "proportional to the needs of the case, considering," among other factors, "the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1).  "An undue burden exists when [a] subpoena is 'unreasonable or oppressive.'" *Lazaridis*, 865 F. Supp. 2d at 524 (citation omitted). *See also Korotki*, 2022 WL 2191519, at *2.   While "[t]here is no strict definition of unreasonable or oppressive," "courts have used several factors in determining a subpoena's reasonableness," including in relevant part "the party's need for the production"; "the breadth of the request for production"; "the time period covered by the request"; and "the burden imposed on the subpoenaed party." *Lazaridis*, 865 F. Supp. 2d at 524 (internal quotation marks and citation omitted).  *See, e.g.*, *Ford Motor Co. v. Edgewood Props., Inc.*, No. 06-1278, 2011 WL 601312 at *3 (D.N.J. Feb. 15, 2011) (finding that "the sweeping scope of the [] Subpoena is overly broad because it requires production of documents and correspondence relating to financial

agreements that do not pertain to the" properties at issue and agreeing "that [plaintiff] is entitled to discovery from third parties as it relates to [defendant's] damages . . ., [but plaintiff] has not met its burden of why documents and correspondence that are unrelated to the [properties] are relevant"); *Korotki*, 2022 WL 2191519, at *5.

Taken together, and as shown below, these factors weigh heavily in favor of quashing the Trust Subpoenas.  *See Lazaridis*, 865 F. Supp. 2d at 527 (granting motion to quash where the requestor's "need for the documents remain[ed] unclear at best" and "the breadth of the request [was] great and intrusive," in part because there was "no time limitation to the request"); *Korotki*, 2022 WL 2191519, at *6, 8 (granting motion to quash where subpoenas were "overbroad as drafted").

### i.      The Trust Subpoenas Seek Irrelevant Information.

First, the Trust Subpoenas lack proportionality and are overbroad because the information the Debtors seek is irrelevant to calculating their current and future liability.  *See* Fed. R. Civ. P. 26(b)(1); 45(d)(3)(A)(iii).  The Debtors seek to obtain the highly confidential claim information of approximately 12,000 mesothelioma victims who filed claims with the Trusts based on alleged exposure to the asbestos containing products of the pertinent Underlying Companies, ***not*** based on exposure to any products of the Debtors.  The breadth of the Trust Subpoenas is simply unjustified given that the Debtors have not established "the importance of the discovery in resolving the issues," Fed. R. Civ. P. 26(b)(1), or "why documents . . .

that are unrelated" to claims against the Debtors "are relevant." *See Ford*, 2011 WL
601312 at \*3. Particularly when coupled with the fact that non-party discovery
requires a "stronger showing of relevance than for simply party discovery," the lack
of connection between the Debtors' vast requests and the information they purport
to require evinces the Trust Subpoenas' lack of proportionality and overbreadth. *See
Chazanow*, 2014 WL 2965697, at \*3. Accordingly, the Trust Subpoenas must be
quashed.

      **ii.    The Trust Subpoenas Fail to Include a 10 Percent
Sampling Requirement or Meaningful Anonymization.**

Second, the Trust Subpoenas are unduly burdensome and lack proportionality
because they fail to incorporate a 10 percent sampling mechanism. Fed. R. Civ. P.
26(b)(1); 45(d)(3)(A)(iv). The Trusts are not meant "to serve as information
clearinghouses or 'public libraries' for entities that wish to obtain confidential
claimant information for their own commercial purposes." *In re Bestwall*, 2021 WL
2209884, at \*3. Indeed, the *Bestwall* court stated that "each Trust should take
reasonable and necessary steps to protect the confidentiality of the information
submitted to it by the Trust Claimants when that information is sought by third
parties for purposes other than determining whether the claims submitted to the Trust
in question are valid and payable." *Id.*

Here, the Debtors' "need for the production," at least in the form currently
requested, is not established; the "breadth of the request" is unreasonable and

unnecessary; and there is no reasonable limit to "the time period covered by the request," *Lazaridis*, 865 F. Supp. 2d at 524.  For these reasons, "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Specifically, the Trust Subpoenas lack sampling or meaningful anonymization requirements, despite the fact that in the *Bestwall* matter, Bates White (which also serves as the Debtors' expert here) ultimately did reissue subpoenas with a 10 percent sampling requirement, confirming that a 10 percent sample size is sufficient. Sampling is critical to protect claimants' confidential data and is widely utilized in litigation and routinely encouraged by courts.  *See, e.g.*, Manual for Complex Litigation (Fourth) § 11.493 (2020) ("Acceptable sampling techniques, in lieu of discovery and presentation of voluminous data from the entire population, can save substantial time and expense, and in some cases provide the only practicable means to collect and present relevant data."); (*Bestwall* June 17, 2021 Order at 2); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 454–55 (2016) (sampling to establish hours worked in a class action lawsuit); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Porter Hayden Co.*, No. CCB-03-3408, 2012 WL 628493, at *1 (D. Md. Feb. 24, 2012) (limiting disclosure to a random sample of 10 percent of the claimants at issue); *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *8 (S.D.N.Y. Dec. 3, 2012) (approving sample to establish fraud liability); *In re*

-23-

*Garlock Sealing Techs.*, 504 B.R. 71, 95 (Bankr. W.D.N.C. 2014) (adopting estimation approach based on responses from a claimant sample).

The Debtors here could likewise easily limit the Trust Subpoenas to a 10 percent sample with appropriate anonymization measures.  The Trusts and Verus utilize significant security measures to safeguard the confidentiality of claimant information, (*see* Eveland Decl. ¶ 8), but once that data is produced to the Debtors and Bates White, it is unprotected.  If the Trust Subpoenas were limited to a 10 percent sample set, the volume of data leaving the Trusts' control would be significantly reduced.

Sampling is also more "proportional to the needs of the case" than is releasing thousands of claimants' data.  *See* Fed. R. Civ. P. 26(b)(1).  The Debtors seek claimant information to substantiate their theory that some claimants allegedly made false submissions to the Debtors prior to bankruptcy that artificially inflated the value of their pre-bankruptcy claim settlements.  However, even if we accept the Debtors' suspect theory as to why they need this information, the fact that subpoenas with a 10 percent sampling requirement were issued in *Bestwall*, where Bates White also serves as the expert reviewing claimant information, conclusively demonstrates that the Debtors do not "need" to receive the protected data of approximately 12,000 claimants, as requested in the Trust Subpoenas, to conduct their analysis, particularly when balanced against the need to protect highly confidential claimant data.  *See*

*Korotki*, 2022 WL 2191519, at *5 ("[C]ourts have recognized the need to guard against undue intrusiveness . . . in order to protect privacy interests.").  Further, the Trust Subpoenas have no meaningful temporal limitation; as drafted, the Trusts will be required to provide any matching claimant information requested by the Debtors for a span of **over 15 years**.  (*See* Bennett Cert., Ex. L.)  A 10 percent sampling requirement would likewise address this issue by dramatically reducing the swath of data that must be reviewed and produced.

Moreover, as a practical matter, responding to the Trust Subpoenas would not entail a "push the button" exercise; instead, the Trust Subpoenas require the Trusts and Verus to perform extensive analyses of data provided by the Debtors, provide notice to affected claimants through a specific process, proscribe what the content of notices must include, and even require the Trusts to meet-and-confer with the Debtors, all of which exceeds the scope of Rule 45.  (*See, e.g.*, Bennett Cert., Ex. K ¶¶ 8–9, 12.)  Accordingly, because the Trust Subpoenas place undue and unjustified burdens on the Trusts, they must be quashed.

### 2.    The Trust Subpoenas Require Disclosure of Protected Matter.

Third, the Trust Subpoenas must be quashed because they seek "privileged or other protected matter."  Fed. R. Civ. P. 45(d)(3)(A)(iii).  *See Gilmore*, 2022 WL 267422, at *3 (granting a motion to quash where, "[s]eparate from relevance, the subpoena also seeks privileged information"); *Myers v. Atl. Health Sys.*, No. 13-

4712, 2016 WL 819619, at *1 (D.N.J. Mar. 2, 2016) (granting motion to quash where subpoenaed information included records "akin to protected medical records" for which "no medical release ha[d] been provided for any individual whose information may be responsive to the Subpoena").

As detailed above, the Trust Subpoenas seek a wide range of information from thousands of claimant submissions, all of which contain highly sensitive medical and personal information, including but not limited to claimants' SSNs, last names, addresses, and confidential narrative responses about their health and asbestos exposures, weighing heavily against their disclosure pursuant to Rule 45(d)(3)(A)(iii). *See Myers*, 2016 WL 819619, at *1 ("Undeniably, the identities and records" responsive to the subpoenas at issue "are defined as confidential by New Jersey State Law.  There is no indication that the confidentiality of this information has been waived and Plaintiff has not provided any releases for the targeted individuals.").  The Trust Subpoenas fail to include any meaningful anonymization scheme that would protect claimants' confidential information. Instead, they allow Bates White to aggregate claimant data post-production with information from the Debtors' database and other sources (including the databases of the other parties to which Debtors issued subpoenas in the underlying matter) into a single information clearinghouse with a matching key that de-anonymizes all of the data.  Federal courts have expressed grave concerns about similar data

compilation schemes. *See, e.g.*, *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 764 (1989) ("[T]he compilation of otherwise hard-to-obtain information alters the privacy interest implicated by disclosure of that information," and a "computerized summary located in a single clearinghouse of information" warrants particular scrutiny); *United States v. Jones*, 565 U.S. 400, 416 (2012) (Sotomayor, J., concurring); *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 500 (1994); *Havemann v. Colvin*, 537 F. App'x 142, 147–48 (4th Cir. 2013) (recognizing privacy interest in nondisclosure of information in a format that could be combined with other available data to identify specific individuals).

Allowing Bates White to consolidate thousands of claimants' highly confidential, protected information into a single clearinghouse would fundamentally undermine the many security measures the Trust and Verus utilize to safeguard claimant data. (*See* Eveland Decl. ¶ 8.) The risk of data theft, misuse, or inadvertent disclosure of information in the Bates White clearinghouse is significant given the existence of a matching key that de-anonymizes the data. Further the Debtors' counsel and its expert, Bates White, are the same counsel and expert for other debtors seeking substantively identical claimant information from trusts in other bankruptcy cases, including in *Bestwall* and *In re DBMP LLC*, No. 22-139-CFC (D. Del. 2022). This overlap of counsel and experts amplifies the risk that any data collected may be used, even if inadvertently, in a manner inconsistent with the limited use restrictions

-27-

in the Trust Subpoenas.  Accordingly, the Trust Subpoenas must be quashed because they require disclosure of protected information without meaningful safeguards.

## III.   DISPOSITION OF THIS MOTION SHOULD BE STAYED PENDING THE OUTCOME OF *IN RE BESTWALL.*

Though discretionary, a motion to stay is generally appropriate where the moving party establishes "good cause" for the stay, which may be based on "undue burden or expense," among other factors.  Fed. R. Civ. P. 26(c)(1); *Burress v. Freedom Mortg. Corp.*, No. 20-15242, 2022 WL 586606, at *2 (D.N.J. Jan. 31, 2022) ("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court" (internal quotation marks and citations omitted)).  "The power to stay proceedings calls for the exercise of judgment, which must weigh competing interests and balance the hardships with respect to the movant and non-movant."  *Id.* (internal quotation marks and citation omitted).  "Consequently, courts generally weigh a number of factors in determining whether to grant a stay including," in relevant part: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party"; and "(3) whether a stay would simplify the issues and the trial of the case."  *Actelion Pharms., Ltd. v. Apotex Inc.*, No. 12-5743, 2013 WL 5524078, at *3 (D.N.J. Sept. 6, 2013) (internal citations and quotation marks omitted) (granting motion to stay discovery pending resolution of a dispositive motion).  When these

factors are weighed, the scale tips conclusively in favor of staying resolution of the Trusts' motion to quash pending the disposition of the *Bestwall* appeal.

There is no indication that a stay of this matter would prejudice the Debtors; in fact, the opposite is true, satisfying the second factor. As detailed *supra* pp. 9–10, the Third Circuit's pending decision in *Bestwall* will be critical to determining whether this Court may properly quash the Trust Subpoenas. The subpoenas at issue in *Bestwall* are nearly identical to those at issue here, and the Third Circuit's ruling in *Bestwall* will provide important guidance on how this Court should address the Trust Subpoenas, as it will confirm whether a district court has the authority to quash a subpoena issued by a bankruptcy court in a foreign jurisdiction that lacked jurisdiction over the targeted trusts. Accordingly, staying this motion pending the disposition of the *Bestwall* appeal will "simplify the issues" before this Court, satisfying the third factor. All of the factors relevant to determining whether the Court should grant this motion to stay therefore weigh in favor of staying resolution of this motion pending disposition of the *Bestwall* appeal. *See Actelion*, 2013 WL 5524078, at *3.

## <u>CONCLUSION</u>

For the foregoing reasons, the Trusts' motion to quash the subpoenas and to stay resolution of this matter pending disposition of the *Bestwall* appeal to the Third Circuit should be granted.

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

Dated:  August 19, 2022

By: <u>*s/ Lynda A. Bennett*</u>
Lynda A. Bennett
Michael A. Kaplan
Rachel M. Dikovics
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
lbennett@lowenstein.com
mkaplan@lowenstein.com
rdikovics@lowenstein.com
*Attorneys for Third-Party Asbestos Trusts*